ANDREW M. CALAMARI
REGIONAL DIRECTOR
Sanjay Wadhwa
Wendy B. Tepperman
Jack Kaufman
Rhonda Jung
Teresa A. Rodriguez
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0106 (Kaufman)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>-against-<br><br>HAENA PARK,<br><br>Defendant. | 16 Civ.   ( )<br>ECF Case<br><br>COMPLAINT<br><br>JURY TRIAL<br>DEMANDED |

Plaintiff Securities and Exchange Commission ("Commission"), for its Complaint against defendant Haena Park ("Park"), alleges as follows:

## SUMMARY OF ALLEGATIONS

1. This case involves a fraudulent scheme orchestrated by Park in which she solicited and obtained millions of dollars from 30 or more investors while misrepresenting her investment track record, the profitability of the investments, and her use of investor funds. Between at least January 2012 and the present, Park touted her supposedly profitable futures and foreign currency ("forex") trading strategy to prospective investors and offered them the opportunity to invest with her and her firm – referred to as "Phaetra" and/or "Argenta" – in funds

and/or other investment pools that she managed. In reality, Park's trading has resulted in losses of more than $16 million during that time period. As part of her fraudulent scheme, Park at times used new investor funds to make Ponzi-like payments to earlier investors.

## VIOLATIONS

2. By virtue of the conduct alleged herein, Park, directly or indirectly, singly or in concert, engaged in and is engaging in transactions, acts, practices and courses of business that constitute violations of Section 17(a) of the Securities Act of 1933 ("Securities Act") [15 U.S.C. § 77q(a)]; and Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

3. Unless Park is permanently restrained and enjoined, she will again engage in the acts, practices, transactions and courses of business set forth in this Complaint and in acts, practices, transactions and courses of business of similar type and object.

## NATURE OF THE PROCEEDINGS AND RELIEF SOUGHT

4. The Commission brings this action pursuant to authority conferred by Section 20(b) of the Securities Act [15 U.S.C. § 77t(b)], and Section 21(d)(1) of the Exchange Act [15 U.S.C. § 78u(d)(1)], seeking to restrain and permanently enjoin Park from engaging in the acts, practices, transactions and courses of business alleged herein.

5. The Commission seeks a judgment permanently enjoining Park from future violations of the securities laws provisions that Park violated as alleged in this Complaint, ordering Park to disgorge her ill-gotten gains and to pay prejudgment interest thereon, and imposing civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)]. Finally, the Commission seeks any other relief the Court may deem just and appropriate.

## JURISDICTION AND VENUE

6. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331, Securities Act Sections 20(b), 20(d) and 22(a) [15 U.S.C. §§ 77t(b), 77t(d), 77v(a)], and Exchange Act Sections 21(d), 21(e), and 27 [15 U.S.C. §§ 78u(d), 78u(e), and 78aa].

7. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2), Section 22(a) of the Securities Act [15 U.S.C. § 77v(a)], and Section 27 of the Exchange Act [15 U.S.C. § 78aa]. Certain of the events constituting or giving rise to the alleged violations occurred in the Southern District of New York. For example, Park resides in Manhattan, traded from an office in her home in Manhattan, and has an office space in Manhattan.

8. In connection with the conduct alleged in this Complaint, Park, directly or indirectly, has made use of the means or instruments of transportation or communication in, and the means or instrumentalities of, interstate commerce, or of the mails, or of the facilities of a national securities exchange.

## DEFENDANT

9. **Park**, age 40, resides in New York, New York. Park attended Harvard University and was employed by various financial firms from approximately 1998 to 2008.

## FACTS

### A. Background

10. In 2013 and 2014, Park founded a series of master-feeder fund entities using the "Phaetra" name: (i) Phaetra Capital Fund, LP ("Phaetra Onshore"), a Delaware limited partnership serving as the onshore feeder fund; (ii) Phaetra Capital International Fund, Ltd. ("Phaetra Offshore"), a Cayman Islands exempted company serving as the offshore feeder fund; and (iii) Phaetra Capital Master Fund, LP ("Phaetra Master"), a Cayman Islands limited

3

partnership serving as the master fund (collectively, the "Phaetra Funds").

11. Park also formed and serves as the Chief Investment Officer of Phaetra Capital GP, LLC, a Delaware limited liability company serving as the general partner of Phaetra Onshore and Phaetra Master, and Phaetra Capital Management, LP, a Delaware limited partnership serving as the investment manager for the Phaetra Funds (collectively, the "Phaetra Advisors"). Since January 2014, the Phaetra Advisors have been registered with the National Futures Association ("NFA") as Commodity Pool Operators, listing the Phaetra Onshore and Phaetra Offshore funds as the commodity pools they operate. Park is registered with the NFA as an Associate Member, Principal, and an Associated Person of the Phaetra Advisors. Each of the periodic reports that the Phaetra Advisers have filed with the NFA represents that they have not commenced operations and have not accepted any customer funds.

12. Park previously had used the name Argenta in forming prior incarnations of the Phaetra Advisors, including Argenta Capital, LLC and Argenta Capital GP LLC, for which she had sought (and subsequently withdrew prior to approval) registration with the NFA. Park also formed Argenta Group, LLC ("Argenta") in approximately May 2010. In approximately July 2015, Park opened, and has been the sole signatory on, a bank account in the name of Argenta (the "Argenta Account"). Park solicited certain investors to deposit their funds into this account in connection with her scheme.

## B. Transfers From Investors Into Park's and Argenta's Bank Accounts

13. Park actively solicited Investors throughout the period from at least January 2012 through the present. Park primarily solicited friends, family members, former Harvard classmates and other individuals with connections to them. From January 2012 to April 2016, Park received at least $14 million from investors (the "Investors") into her personal bank

4

Case 1:16-cv-04103-VEC Document 1 Filed 06/02/16 Page 5 of 12


accounts and the Argenta Account. Specifically, Park received more than $10 million from Investors into bank accounts in her name and approximately $3.4 million into the Argenta Account. During that same time period, Park wired approximately $18 million to a personal brokerage account in her own name at a broker-dealer registered with the Commission (hereinafter the "Trading Account").

14. From January 2012 through April 2016, Park engaged in extremely active day-trading in the Trading Account, primarily in highly leveraged futures and forex trading. Park consistently incurred significant trading losses in the overwhelming majority of months during this time period. In the aggregate, of the approximately $18 million deposited to the Trading Account, Park accumulated realized losses totaling more than $16 million (inclusive of transaction costs) and withdrew approximately $1.5 million—virtually wiping out the entire value.

15. When Park received Investor funds into her personal bank account, Park typically transferred most, and at times all, of the funds to the Trading Account shortly after receiving those funds. The following chart illustrates the flow of Investor funds into Park's personal bank accounts, and the subsequent transfers of those funds into the Trading Account:

| Date | Amount ($) | Funds Wired From | Funds Wired To |
|---|---|---|---|
| 01/05/2012 | $50,000 | Investor | Haena Park |
| 01/05/2012 | ($20,000) | Haena Park | Trading Account |
| 04/24/2012 | $100,000 | Investor | Haena Park |
| 04/24/2012 | ($75,000) | Haena Park | Trading Account |
| 02/14/2013 | $100,000 | Investor | Haena Park |
| 02/14/2013 | ($80,000) | Haena Park | Trading Account |
| 04/10/2013 | $80,000 | Investor | Haena Park |
| 04/11/2013 | ($70,000) | Haena Park | Trading Account |
| 12/04/2015 | $450,000 | Investor | Haena Park |
| 12/04/2015 | ($350,000) | Haena Park | Trading Account |

accounts and the Argenta Account. Specifically, Park received more than $10 million from Investors into bank accounts in her name and approximately $3.4 million into the Argenta Account. During that same time period, Park wired approximately $18 million to a personal brokerage account in her own name at a broker-dealer registered with the Commission (hereinafter the "Trading Account").

14. From January 2012 through April 2016, Park engaged in extremely active day-trading in the Trading Account, primarily in highly leveraged futures and forex trading. Park consistently incurred significant trading losses in the overwhelming majority of months during this time period. In the aggregate, of the approximately $18 million deposited to the Trading Account, Park accumulated realized losses totaling more than $16 million (inclusive of transaction costs) and withdrew approximately $1.5 million—virtually wiping out the entire value.

15. When Park received Investor funds into her personal bank account, Park typically transferred most, and at times all, of the funds to the Trading Account shortly after receiving those funds. The following chart illustrates the flow of Investor funds into Park's personal bank accounts, and the subsequent transfers of those funds into the Trading Account:

| Date | Amount ($) | Funds Wired From | Funds Wired To |
|---|---|---|---|
| 01/05/2012 | $50,000 | Investor | Haena Park |
| 01/05/2012 | ($20,000) | Haena Park | Trading Account |
| 04/24/2012 | $100,000 | Investor | Haena Park |
| 04/24/2012 | ($75,000) | Haena Park | Trading Account |
| 02/14/2013 | $100,000 | Investor | Haena Park |
| 02/14/2013 | ($80,000) | Haena Park | Trading Account |
| 04/10/2013 | $80,000 | Investor | Haena Park |
| 04/11/2013 | ($70,000) | Haena Park | Trading Account |
| 12/04/2015 | $450,000 | Investor | Haena Park |
| 12/04/2015 | ($350,000) | Haena Park | Trading Account |

16. When Investors deposited funds into the Argenta Account, Park typically transferred the majority of those funds to her personal bank accounts, and then shortly thereafter wired a portion of those funds to the Trading Account. The following chart is illustrative of this flow of funds:

| Date | Amount ($) | Funds Wired From | Funds Wired To |
|---|---|---|---|
| 08/24/2015 | $700,000 | Investor | Argenta Account |
| 08/24/2015 | ($700,000) | Argenta Account | Haena Park |
| 08/24/2015 | $500,000 | Haena Park | Trading Account |
| 12/10/2015 | $300,000 | Investor | Argenta Account |
| 12/10/2015 | ($300,00) | Argenta Account | Haena Park |
| 12/10/2015 | $150,000 | Haena Park | Trading Account |
| 01/11/2016 | $250,000 | Investor | Argenta Account |
| 01/11/2016 | ($250,000) | Argenta Account | Haena Park |
| 01/11/2016 | $250,000 | Haena Park | Trading Account |

17. In several instances, Park also made Ponzi-like transfers of funds received from new Investors to make payments to earlier Investors. The following chart is illustrative of certain Ponzi-like transfers made by Park during the relevant period:

| Date | $ Amount | Funds Wired From | Funds Wired To |
|---|---|---|---|
| 03/31/2015 | $440,000 | Investor 1 | Haena Park |
| 03/31/2015 | ($30,000) | Haena Park | Investor 2 |
| 03/31/2015 | ($300,000) | Haena Park | Trading Account |
| 01/11/2016 | $623,324 | Investor 3 | Argenta Account |
| 01/11/2016 | ($420,000) | Argenta Account | Investor 2 |
| 04/04/2016 | $30,000 | Investor 4 | Argenta Account |
| 04/05/2016 | ($25,000) | Argenta Account | Investor 5 |

## C. Park's Misrepresentations to Investors

### 1. Investors A and B

18. Investor A is a retiree; Investor B is her adult child. Prior to investing with Park, Investor A told Park that that she would be liquidating a retirement account in order to invest with Park and that the money constituted a significant percentage of her net worth. From late 2012 through May 2015, Investors A and B made a series of investments with Park on at least 9

6

dates and totaling at least $478,000. Park knowingly deceived Investors A and B by making the following materially false statements and omissions and engaging in the following deceptive conduct.

19. In soliciting Investor A's investment, Park falsely and misleadingly reassured Investor A that the investment was a low risk enterprise, without disclosing that, to the contrary, Park's track record with her investment strategy had consistently lost money.

20. On or about December 4, 2012, Park emailed Investor B a purported anonymous investor's account statement falsely showing sizable historical monthly returns on that investor's investment. In fact, as described above, Park's prior trading had been extremely unprofitable.

21. Park also regularly emailed Investors A and B false monthly statements regarding Investor A's and B's own investments with Park. The monthly statements falsely showed consistently high net returns, thus inducing Investors A and B to increase the amounts of their investments with Park.

### 2. Investor C

22. Investor C has certain physical health issues. From April through September 2015, Investor C on at least three occasions wired funds totaling at least $3.7 million to Park for investment. Prior to investing with Park, Investor C told Park that he would be retiring shortly and would need to rely on his investments for income.

23. Park knowingly deceived Investor C by making the following materially false statements and omissions and engaging in the following deceptive conduct.

24. Prior to his investing with Park, Park provided Investor C a purported historical performance chart that falsely represented that Park's prior pooled investments had been profitable. At no time did Park inform Investor C of Park's actual, unprofitable, investment

7

history.

25.   Also prior to his investing with Park, Park falsely stated to Investor C that the investment pool that she managed contained mostly her own capital. In fact, Park's investment pool was not mostly her own capital and was primarily funded with Investors' capital.

26.   Park also emailed Investor C monthly account statements regarding his own investments with Park, falsely showing positive returns on his investments, and Investor C relied on those reports in increasing his investments with Park on at least two occasions.

### 3.   **Investor Family D**

27.   Investor Family D is a family that collectively invested at least $1.45 million with Park in January 2016. In April 2016, Investor Family D invested additional funds with Park based upon Park's false representations that their investment was earning significant returns. Park knowingly deceived Investor Family D by making the following materially false statements and omissions and engaging in the following deceptive conduct.

28.   In soliciting Investor Family D to invest, Park e-mailed Investor Family D a document containing false historical investment returns.

29.   In addition, Park sent Investor Family D monthly statements falsely showing positive returns on Investor Family D's investments. At no time did Park inform Investor Family D of Park's actual, unprofitable, investment history.

30.   At the time that they made their above-described investments, Investors A, B, C, and Family D believed that their investments were with Park or her firm (referred to as "Phaetra" and/or "Argenta") in funds and/or other investment pools managed by Park.

### D. Park's False Statements to the NFA

31. On April 4, 2016, the NFA conducted an on-site examination of the Phaetra Advisors. As part of the exam, the NFA staff interviewed Park. To conceal her fraudulent scheme from detection, Park made false statements to the NFA examiners. Park falsely represented to NFA staff, including in an email, that all of the trading activity in the Trading Account was "proprietary in nature" and was comprised "solely of [Park's] personal funds."

## FIRST CLAIM FOR RELIEF
### Violations of Section 17(a) of the Securities Act

32. The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 31 of this Complaint.

33. From in or about January 2012 through the present, Park, directly or indirectly, singly or in concert, by use of the means or instruments of transportation or communication in interstate commerce, or of the mails, in connection with the offer or sale of securities, has: (a) employed, and is employing, devices, schemes and artifices to defraud; (b) obtained, and is obtaining, money or property by means of untrue statements of material fact, or has omitted, and is omitting, to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged, and is engaging, in transactions, acts, practices and courses of business which would operate as a fraud or deceit upon the purchaser.

34. By reason of the foregoing, Park, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined, will continue to violate Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

## SECOND CLAIM FOR RELIEF
**Violation of Section 10(b) of the Exchange Act and Rule 10b-5**

35.     The Commission realleges and incorporates by reference herein each and every allegation contained in paragraphs 1 through 31 of this Complaint.

36.     From in or about January 2012 through the present, Park, directly or indirectly, singly or in concert, by use of the means or instrumentalities of interstate commerce, or of the mails, or of the facilities of a national securities exchange, in connection with the purchase or sale of securities, has: (a) employed, and is employing, devices, schemes and artifices to defraud; (b) made, and is making, untrue statements of material fact, or has omitted, and is omitting, to state material facts necessary in order to make statements made, in light of the circumstances under which they were made, not misleading; and (c) engaged, and is engaging, in transactions, acts, practices and courses of business which operated or would have operated as a fraud or deceit upon any person.

37.     By reason of the foregoing, Park, directly or indirectly, singly or in concert, has violated, is violating, and unless enjoined, will continue to violate, Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

## PRAYER FOR RELIEF

**WHEREFORE**, the Commission respectfully requests that the Court grant the following relief:

### I.

A Judgment permanently restraining and enjoining Park, her agents, servants, employees and attorneys and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 17(a) of the Securities Act [15 U.S.C. § 77q(a)].

### II.

A Judgment permanently restraining and enjoining Park, her agents, servants, employees and attorneys and all persons in active concert or participation with her, who receive actual notice of the injunction by personal service or otherwise, and each of them, from future violations of Section 10(b) of the Exchange Act [15 U.S.C. § 78j(b)] and Rule 10b-5 [17 C.F.R. § 240.10b-5].

### III.

A Judgment ordering Park to disgorge her ill-gotten gains, plus prejudgment interest, and such other and further amount as the Court may find appropriate.

### IV.

A Judgment ordering Park to pay civil money penalties pursuant to Section 20(d) of the Securities Act [15 U.S.C. § 77t(d)], and Section 21(d)(3) of the Exchange Act [15 U.S.C. § 78u(d)(3)].

V.

Such other and further relief as this Court deems just and proper.

Dated: June 2, 2016
New York, New York

By: _____
Andrew M. Calamari
Sanjay Wadhwa
Wendy B. Tepperman
Jack Kaufman
Rhonda Jung
Teresa A. Rodriguez
Attorneys for Plaintiff
SECURITIES AND EXCHANGE COMMISSION
New York Regional Office
200 Vesey Street, Suite 400
New York, New York 10281-1022
(212) 336-0106 (Kaufman)
Email: KaufmanJa@sec.gov